UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ASENETA AND MICHAEL SCHWARTZ, | ) | Case No. 13 B 44047 |
| | ) | |
| Debtors. | ) | Judge Pamela S. Hollis |

MEMORANDUM OPINION IN SUPPORT OF
ORDER GRANTING MOTION TO DISMISS

This matter came before the court on September 16, 2014.[1] The court ruled orally at the end of that hearing, granting the motion of Barclays Capital, Inc. to dismiss Aseneta and Michael Schwartz's Chapter 7 bankruptcy case. The order granting the motion to dismiss provided that the Schwartzes' time to appeal would be extended to fourteen days following the docketing of the court's ruling on the case trustee's fee application.

The parties eventually filed a joint request for certification of direct appeal to the Court of Appeals for the Seventh Circuit, and appeared before the court on January 15, 2015, to present this request. At that time, the court determined that a written opinion in support of the order granting the motion to dismiss would be appropriate in order to provide clarity to the record.

Barclays' motion to dismiss was granted for cause pursuant to 11 U.S.C. § 707(a), as described below. Since the court is issuing an order on the case trustee's fee application concomitantly with this memorandum opinion, the time to appeal the order granting the motion to dismiss will begin to run on the docketing date of that fee application order. Fed. R. Bankr. P. 8002(a)(1) requires a notice of appeal to be filed within fourteen (14) days after entry of the judgment, which in this case would be February 25, 2015. The time to appeal the order granting

---

[1] References herein to "Tr. at __" are to the transcript from the court hearing on September 16, 2014. This can be found on the court docket at EOD 103, Ex. B.

the motion to dismiss is extended an additional seven (7) days, however, to March 4, 2015, in consideration of the request made by Michael Schwartz in open court.

## BACKGROUND

When Michael Schwartz joined Barclays Capital, Inc. in November 2010, he received a $2.8 million employment package. Of that amount, $400,000 was paid to him shortly after he began work, in the form of a loan that would be forgiven in equal installments on the first through seventh anniversaries of his start date.[2] Michael's employment with Barclays was terminated on May 22, 2012. This allegedly triggered an obligation to repay most of the $400,000. When Michael did not repay the funds, Barclays filed a Statement of Claim pursuant to the Financial Industry Regulatory Authority (FINRA). Michael filed certain counter-claims. In September 2013, the FINRA arbitration panel entered an award in favor of Barclays in the amount of $568,568: compensatory damages of $314,286; interest of $9,603; and attorneys' fees of $244,679.

On October 28, 2013, FINRA notified Michael that within three weeks he would be suspended from association for failure to pay the award, unless one of four defenses was applicable. Michael attempted to reach a negotiated settlement with Barclays, which would have been a satisfactory defense, but was unsuccessful. He then chose to file for relief under Chapter 7 of the Bankruptcy Code, which was another of the four defenses.

According to Schedule I, Michael earns monthly gross wages of $11,008.94. After deductions for payroll taxes, Social Security, insurance and a contribution of $20 to United Way, he takes home $7,349.52 in earned income. He also receives $2,200 in rental income from real property, for a total average monthly income of $9,549.52.

---

[2] The remaining $2.4 million would only be paid if Michael generated a certain amount of revenue for Barclays.

The Schwartzes' monthly budget on Schedule J includes the following items:

| Item | Amount |
| --- | --- |
| Rent or home mortgage payment | 3,200.00 |
| Charitable contributions | 1,000.00 (according to SOFA Question 7, Michael and Aseneta donate this amount monthly in tithes and offerings) |
| Auto installment payments | 850.00 |
| Cell phone | 200.00 |
| Cable/Internet | 200.00 |
| Mortgages on rental property | 1,800.00 |
| School tuition | 1,000.00 |
| Early childhood development | 200.00 |
| Extracurricular educational classes | 100.00 |
| Automobile maintenance | 100.00 |
| Personal grooming | 150.00 |
| Laundry/dry cleaning | 100.00 |

The Schwartzes' budgeted expenses exceed their income by $1,560.48.

In 2013, the year that they filed for relief under Chapter 7, the Schwartzes took one or two trips to Disney World in Orlando, Florida. In 2014, they went snowboarding a couple of times at a local ski resort. They also made regular monthly payments on their Range Rover and Michael voluntarily contributed 5% of his paycheck to a retirement plan. Although Aseneta does not work outside the home, their older child attends private kindergarten full time at a cost of

$18,000/year and started swimming lessons in the spring of 2014. Their younger child attends a drop-in program once or twice a week at a cost of $50 or $60 per session.

## LEGAL DISCUSSION

11 U.S.C. § 707 contains the Code sections that govern dismissal of a Chapter 7 case:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including--

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

(b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

Although Barclays requested dismissal under both §§ 707(a) and (b), § 707(b) is applicable only if a debtor's "debts are primarily consumer debts." Rather than consume the parties' time and resources with an evidentiary hearing to determine whether the Schwartzes' debts are primarily consumer debts, the court determined that dismissal was appropriate for cause, under § 707(a).

The Seventh Circuit has not ruled on the meaning of "cause."[3] The Circuits that have reached a decision on this issue are split in their interpretation of § 707(a) – is it limited to technical and procedural issues, or is "cause" defined more expansively? Compare Perlin v. Hitachi Capital America Corp., 497 F. 3rd 364 (3rd Cir. 2007); Industrial Ins. Servs., Inc. v. Zick, 931 F. 2nd 1124 (6th Cir. 1991) with In re Padilla, 222 F. 3rd 1184 (9th Cir. 2000); In re Huckfeldt, 39 F. 3rd 829 (8th Cir. 1994). The trial level courts, including those within the Seventh Circuit, are split as well. Compare In re Adolph, 441 B.R. 909 (Bankr. N.D. Ill. 2011) (Goldgar, J.) with First Capital Bank of Kentucky v. Blok, 2012 WL 1682042 (S.D. Ind. May 14, 2012); In re Tallman, 417 B.R. 568 (N.D. Ind. 2009); U.S. v. Pedigo, 329 B.R. 47 (S.D. Ind. 2005); In re Jakovljevic-Ostojic, 517 B.R. 119 (Bankr. N.D. Ill. 2014) (Barnes, J.).

The primary question addressed by these cases has been whether cause for dismissal under § 707(a) includes bad faith. See Padilla, 222 F. 3rd at 1191 ("Whether bad faith can provide 'cause' for dismissing a Chapter 7 bankruptcy petition pursuant to § 707(a) is a matter of first impression for this court.")

The facts of this case do not suggest that the Schwartzes acted in bad faith. As the court stated when ruling orally, "I'm not even talking about bad faith. I'm not suggesting you're operating in bad faith at all here." Tr. at 6, lines 3-5. Indeed, the Eighth Circuit warned that "framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7." Huckfeldt, 39 F. 3rd at 832.

Putting aside the issue of bad faith, some of the published decisions found that § 707(a) itself limits the type of conduct that warrants dismissal, since the three enumerated examples of

---

[3] In 2005, a panel of the Seventh Circuit found an appeal to be premature where the district court remanded a case to the bankruptcy court with instructions "to include 'bad faith' as an element of 11 U.S.C. § 707(a) in determining the Trustee's Motion to Dismiss." In re Pedigo, 2005 WL 2030309 (7th Cir. June 15, 2005). This is the only mention of § 707(a) in any opinion or order of the Seventh Circuit that this court could locate.

cause are "technical and procedural violations of the Bankruptcy Code." Padilla, 222 F. 3rd at 1192 (quotation omitted).

This court finds that § 707(a) is not limited to situations where a debtor's violation of the Code is technical or procedural. It is clear that the three examples of "cause" in § 707(a) are merely illustrative, and not exhaustive. This is obvious from the language of the statute, which states that dismissal may be only "for cause, **including** . . ." (Emphasis added.) Pursuant to 11 U.S.C. § 102(3), which provides rules of construction for common terms and phrases in the Bankruptcy Code, "'includes' and 'including' are not limiting." The technical and procedural interpretation reads a limit into the statute that takes the focus of the analysis away from the true question, which is whether "cause" for dismissal exists.[4]

The cases that limit "cause" also focus on the canon of statutory construction that provides that "[w]here both a specific and a general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first." Padilla at 1192 (quotation omitted). Since "the Code specifically addresses the misconduct of debtors elsewhere," Adolph, 441 B.R. at 912, such misconduct cannot be construed as cause to dismiss a Chapter 7 case.

---

[4] An alternative and interesting argument is provided in In re Piazza, 460 B.R. 322, 324 (Bankr. S.D. Fla. 2011), aff'd, 469 B.R. 388 (S.D. Fla. 2012), aff'd, 719 F. 3rd 1253 (11th Cir. 2013):

> While the examples listed in § 707(a) could be characterized as mere post-petition procedural issues, they may also be characterized as requirements placed upon debtors to show they have filed their case in good faith and are moving it forward in good faith. If a debtor were to create an unreasonable delay prejudicing creditors, it could be said that he is using the powers of the bankruptcy code and the bankruptcy court in bad faith such that dismissal is appropriate under § 707(a)(1). If a debtor were to fail to pay fees as required under 28 U.S.C. § 1930, it may be an indication that the debtor did not file the case with a good faith purpose such that dismissal is appropriate under § 707(a)(2). The numerous disclosures required by § 521 provide insight as to any debtor misconduct or bad faith purpose for filing a case, and failure to comply with § 521 disclosure requirements may indicate that the Debtor is not proceeding in good faith such that dismissal is appropriate under § 707(a)(3).

But these other remedies, such as objecting to the dischargeability of a particular debt under § 523, or to the discharge of the debtor under § 727, are not always available. Some debtors will not receive a discharge. See §§ 727(a)(1) (discharges only available to individual debtors), (a)(8) and (a)(9) (discharge not available if a prior discharge received in the recent past). If there is no discharge to which a creditor may object, and dismissal for cause is not available, an undeserving debtor will receive the benefits of Chapter 7. Or what if a debtor's actions with regard to a particular creditor would support an action under § 523 as well as a motion to dismiss for cause, but for some reason that creditor chooses not to pursue a dischargeability action? Are other parties in interest to be blocked from seeking dismissal for cause, simply because a dischargeability proceeding could only have been brought by that one creditor and was not?

Moreover, this focus on general versus specific statutes ignores the Supreme Court's instruction that "in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Section 707(a) says a court may dismiss a case for cause, "[a]nd it doesn't say, except for bad faith or abuse." Tr. at 7, lines 6-7. It requires notice and a hearing, and provides three non-limiting examples of cause. If facts exist that constitute cause, then dismissal is appropriate.

What is the cause for dismissal in this case? The Schwartzes' extravagant lifestyle, which continued post-petition without any hint of belt-tightening. "[T]he cause is that your income level is so high that you shouldn't be in a Chapter 7. You should be making some effort." Tr. at 9, lines 9-11. "The ability to repay debts, living an expansive lifestyle beyond

7

one's means, and singling out a major creditor for nonpayment are the primary factors that merit dismissal for abuse under § 707(a)." In re Gilman, 2012 WL 1230276, *3 (Bankr. E.D.N.C. April 12, 2012). As the Gilman court concluded:

> The court has avoided passing judgment on the debtors' specific financial choices. However, the court must look at the particular facts of this case in order to determine whether, under the totality of the circumstances, it has been filed in good faith. No one expense or decision of the debtors has driven the court's decision, but a combination of these factors has led the court to find that this filing was not in good faith. The debtors' lifestyle is lavish and rather than attempting to pay off their creditors, they have done everything they can to not only preserve this lifestyle but make it more comfortable. Given their financial situation, such comforts and indulgences without any belt tightening or efforts to pay off their creditors is an improper utilization of the bankruptcy process.

Gilman, 2012 WL 1230276, *6.

This court is not making a finding that for the Schwartzes to maintain their lifestyle would be an abuse of the provisions of Chapter 7. Such a finding would be an improper overlap with § 707(b). Instead, to condone the Schwartzes' spending of over $11,000 each month on items including private school tuition and a luxury vehicle as they wait for their Chapter 7 discharge would be an improper use of the Bankruptcy Code. Therefore, cause exists to dismiss their Chapter 7 case. "I'm setting this up precisely under 707(a) for cause. And the finding is based on [the] income level of the debtor that I feel it would be unfair to allow them to take advantage of Chapter 7." Tr. at 12, lines 11-14.

Considering all of the circumstances here, cause exists to dismiss the Schwartzes' Chapter 7 case. Although the court is not adopting a particular list of factors that might be reviewed in a totality of the circumstances analysis, it is clear that the Schwartzes' lifestyle far exceeds the standard of living that this court would allow for debtors in Chapter 13. "I would not let a Chapter 13 debtor do the things that you're doing with private school, the nature of your lifestyle, which there's nothing wrong with it. . . . What I'm saying is you have a high income

level where you can work out something, or you can go to Chapter 11." Tr. at 9, lines 16-25. While the court did not <u>require</u> the Schwartzes to convert their case to Chapter 11,[5] it did give them the option to consider whether they would rather pay back their creditors some portion of their claims over time, while maintaining a standard of living that is appropriate for debtors in a reorganization case.

There is no indication that the Schwartzes stepped up their spending in anticipation of bankruptcy or took other actions that might call their integrity into question. However, their "substantial income" and "comfortable lifestyle" are cause for dismissal under § 707(a) because "[b]ankruptcy protection was not intended to assist those who are attempting to preserve a comfortable standard of living at the expense of their creditors." <u>In re Davidoff</u>, 185 B.R. 631, 636 (Bankr. S.D. Fla. 1995). Debtors who choose Chapter 13 and make an attempt to repay their creditors must nearly always tighten their belts for a period of time. It would be unfair to grant the Schwartzes the benefit of a Chapter 7 discharge without any impact on their lifestyle.

The Schwartzes' monthly income is $9,549.52. Their monthly expenses include $850 payments on a Range Rover, $1,000 monthly charitable contributions, and private school tuition for a kindergarten-aged child. As one court noted, "bankruptcy protection is a privilege and not a right and Chapter 7 is for the honest but unfortunate debtor who is seeking a fresh start, not a head start." <u>In re Lombardo</u>, 370 B.R. 506, 511 (Bankr. E.D.N.Y. 2007 (quotation omitted).

The court makes no finding that the Schwartzes were acting in bad faith, only that allowing them to remain in Chapter 7 while maintaining this lifestyle would result in a misuse of the protections granted by the Bankruptcy Code. This is cause to dismiss their bankruptcy case pursuant to § 707(a).

---

[5] A bankruptcy court cannot require conversion to Chapters 11 or 13, because to do so would be a form of involuntary servitude. Conversion to Chapter 13 is not possible because the Schwartzes' debt levels are too high to qualify. See 11 U.S.C. § 109(e).

## CONCLUSION

For all of the reasons stated above, the court finds that cause exists to dismiss this bankruptcy case pursuant to 11 U.S.C. § 707(a).

Date:    **FEB 1 1 2015**             _/s/ Pamela S. Hollis_

PAMELA S. HOLLIS
U.S. Bankruptcy Judge